UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:23-cr-00109-JAW-1 |
| ) | |
| MICHAEL BOLSTER ) | |

**SENTENCING ORDER**

In this sentencing order, the court explains that it will comply with the provisions of the United States Sentencing Guidelines and caselaw from the Court of Appeals for the First Circuit in assessing the drug quantity attributable to a defendant who has been convicted of engaging in a drug-trafficking conspiracy.

**I.   BACKGROUND**

On July 28, 2023, the Government filed a criminal complaint against Michael Bolster and his wife Jessica Bolster, alleging that in July 2023, they had engaged in the distribution of controlled substances, namely fentanyl, in violation of federal criminal law. *Compl.* (ECF No. 3). On October 4, 2023, in Count One, a federal grand jury indicted Mr. Bolster, Ms. Bolster, and Darwin Mateo, charging Mr. and Ms. Bolster with engaging in a conspiracy to distribute fentanyl between July 12, 2023 and August 3, 2023. *Indictment* (ECF No. 49). As regards Mr. Bolster, the indictment charged that his conduct as a member of the conspiracy, together with the reasonably foreseeable conduct of other members, involved 40 grams or more of a mixture or substance containing fentanyl. *Id.* at 1-2. Counts Two and Three alleged specific instances of distribution of fentanyl by Mr. Bolster. *Id.* at 2.

On January 18, 2024, Mr. Bolster pleaded guilty to all three charges. *Min. Entry* (ECF No. 91). At his guilty plea hearing, Mr. Bolster admitted the accuracy of a prosecution version of the offenses, which stated that he had "knowingly and intentionally conspired with Jessica Bolster and others known and unknown to distribute and possess with the intent to distribute 40 grams or more of a mixture or substance containing [fentanyl]." *Pros. Version* at 1 (ECF No. 89). The prosecution version detailed two instances where Mr. Bolster sold fentanyl: a July 12, 2023 sale of 9 grams and a July 13, 2023 sale of 30 grams. *Id.* at 1-2. On July 26, 2023, Mr. Bolster arranged for a sale of 29 grams, and Ms. Bolster completed the sale later that day. *Id.* at 2. Then on August 3, 2023, law enforcement searched the Bolster residence and found two bundles: one containing 301 grams of a mixture or substance containing fentanyl and the other 240 grams of a mixture or substance containing fentanyl. *Id.* Mr. Bolster admitted that "[a] trained and experienced agent would testify that the quantity of seized fentanyl is consistent with further distribution and inconsistent with personal use." *Id.*

On April 2, 2024, the United States Probation Office (PO) completed a Revised Presentence Investigation Report (PSR). *Revised Presentence Investigation Report* (ECF NO. 107) (*PSR*). Describing the offense conduct, the PSR states that Mr. and Ms. Bolster were distributing cocaine and fentanyl from their apartment in Biddeford, Maine, and allowed two young males, who were his source of supply, to sell drugs from the apartment. *Id.* ¶ 5.

In calculating the drug quantity attributable to Mr. Bolster, the PSR eliminated three controlled buys from Mr. and Ms. Bolster in July 2023. *Id.* ¶ 10. The PSR included the drugs seized from the Bolster residence on August 3, 2023 and added a historical report that Mr. Bolster bought 12 sticks (120 grams) from "Charlie" / "Jason." *Id.* The PSR calculated the total drug quantity to equal 662.1 grams. *Id.*

Based on this drug quantity, the PSR fixed Mr. Bolster's base offense level at 30 pursuant to United States Sentencing Guideline (USSG) § 2D1.1(a)(5), increased this level by two for maintaining a premises for the purpose of drug distribution pursuant to USSG § 2D1.1(b)(12), and granted a three-level reduction for acceptance of responsibility under USSG § 3E1.1, for a total offense level of 29. *Id.* ¶¶ 19-28. The PSR calculated Mr. Bolster's criminal history as IV. *Id.* ¶¶ 31-42. With a total offense level of 29 and a criminal history category of IV, the PSR calculated the guideline sentence range to equal 121 to 151 months. *Id.* ¶ 75.

## II.   DRUG QUANTITY

At the presentence conference, defense counsel raised several issues, including drug quantity, the enhancement for drug-involved premises, subtraction of personal use amounts, Sixth Amendment exclusion of prior convictions, and a request for a variant sentence. *Sentencing Legal Mem. Addressing Relevant Conduct* at 8 (ECF No. 120) (*Def.'s Mem.*). Defense counsel elected to brief only the drug quantity issue, leaving the other issues for resolution at the sentencing hearing. *Id.*

A.     The Defendant's Position

Mr. Bolster characterizes the PSR as having taken a "broad view of relevant conduct" in arriving at 662.1 grams of drug quantity. *Id.* at 1. Mr. Bolster argues that the PO "believed the charged conduct of 68.842 grams of fentanyl, should be substituted for the real offense conduct involving the greater amounts." *Id.* at 2. Mr. Bolster observes that the PO described the Bolster home as a "trap house," and he objects to this characterization, arguing that it relies on evidence from cooperating sources. *Id.* Mr. Bolster points out that the transactions themselves took place away from the Bolster residence, and that there is no evidence that the Bolsters allowed the courier who stayed with them to deal drugs from their apartment. *Id.* In fact, Mr. Bolster maintains that they had tried to stop the courier from staying with them, but they were unable to do so because the drugs belonged to the courier. *Id.* at 3.

Mr. Bolster turns to First Circuit law. Contrasting *United States v. Nieves-Meléndez*, 58 F.4th 569 (1st Cir. 2023), where the First Circuit concluded that the defendant forfeited the argument that he should not have been held responsible for drugs in his apartment, Mr. Bolster points out that he is objecting to this determination by the PO. *Id.* (quoting *Nieves-Meléndez*, 58 F.4th at 579). Here, Mr. Bolster points out that the courier only gave the Bolsters a couple of sticks of fentanyl, about 20 grams, in exchange for staying with them. *Id.* Mr. Bolster says that even if he may have known that the courier was "generally in the business of distributing drugs," he "denies that he had sufficient knowledge to aid and abet the courier, nor were the 661.2 grams foreseeable to him within the scope of an agreement that

4

involved tens of grams of fentanyl not hundreds." *Id.* at 4. Mr. Bolster says that the Court has "an obligation to make an individualized finding of drug quantity in a case where there is jointly undertaken criminal activity." *Id.*

Mr. Bolster examines First Circuit caselaw that requires an individualized finding of drug quantity in order to apply a statutory mandatory minimum sentence. *Id.* at 4-5. Quoting *United States v. Colon-Solis*, 354 F.3d 101, 103 (1st Cir. 2004), Mr. Bolster contends that the Court must make an individualized finding that he was properly held responsible for only those drugs reasonably foreseeable to him in jointly undertaken criminal activity. *Id.*

Quoting USSG § 1B1.3(a)(1), Mr. Bolster contends that the 661.2 grams is improperly deemed relevant conduct as he was not personally responsible for that amount simply because he allowed a drug courier to stay at his home and because the amounts the drug courier brought were not reasonably foreseeable to Mr. Bolster. *Id.* at 5. Mr. Bolster argues that the Court should "not include more than 70.2 grams as Mr. Bolster's relevant conduct." *Id.*

Conceding that USSG § 1B1.3 n.4 provides commentary that seems to include the full amount of drugs in a suitcase, even though the transporter knew only that there were drugs in the suitcase, not the actual amount, Mr. Bolster nevertheless asserts "that the law in the United States draws a fundamental distinction between possession of a container like a suitcase and possession of a residence with other people." *Id.* To be responsible for aiding and abetting, Mr. Bolster compares an accomplice's knowledge of a confederate's design to carry a gun under *Rosemond v.*

5

*United States*, 572 U.S. 65, 78 (2014). *Id.* By way of his analogy, it would be necessary for Mr. Bolster to know the drug quantity before he allowed the courier to stay at his house in order for him to have aided and abetted a 21 U.S.C. § 841(b)(1)(A) offense." *Id.* at 6-7. Citing *United States v. Wood*, 924 F.2d 399, 404 (1st Cir. 1991), Mr. Bolster states that "any quantity above the upper end of 140 grams for base offense level of 24 under the guidelines falls within the exception to relevant conduct promulgated in [*Wood*]." *Id.* at 7.

Mr. Bolster turns to the foreseeability requirement. *Id.* at 8. Quoting *United States v. O'Campo*, 973 F.2d 1015, 1026 (1st Cir. 1992), he argues that he "did not know the extent of the quantities that would be involved in the courier's possession and he did not see evidence that it exceeded what he would be given as payment." *Id.* at 8. In short, Mr. Bolster contends that 661.2 grams of fentanyl "should not be attributed to him because it was not foreseeable that allowing the courier to stay at his home would involve such a quantity." *Id.*

### B. The Government's Response

On May 23, 2024, the Government responded. *Gov't's Sent. Mem.* (ECF No. 127) (*Gov't's Opp'n*). In its memorandum, the Government lists the evidence it anticipates offering at the sentencing hearing: video recordings of statements made by Mr. Bolster during his August 3, 2023 post-arrest interview, video recording of the July 26, 2023 controlled purchase at his residence, and law enforcement reports. *Id.* at 2. The Government says it will show:

6

1) That Mr. Bolster and Ms. Bolster, his wife and co-defendant, resided at 84 Granite Street, Biddeford, Maine;

2) That Mr. Bolster allowed Darwin Mateo and "Jason," associates of a known drug dealer, to repeatedly stay at the apartment over the course of several months;

3) That Mr. Bolster and others, including Mr. Mateo and Jason, used the Bolster apartment as a location to store and distribute fentanyl;

4) That Mr. Mateo and Jason were Mr. Bolster's source of supply for the fentanyl he and Ms. Bolster distributed to their own customers;

5) That one of the controlled purchases took place inside the Bolster apartment, and during the sale, Ms. Bolster brought money to an unidentified Black male in the apartment and returned with fentanyl;

6) That Ms. Bolster and Mr. Mateo were arrested inside the Bolster apartment on August 3, 2023, and that law enforcement recovered 542.1 grams of fentanyl packaged for distribution from the apartment on that same day; and

7) That Mr. Bolster was arrested in Biddeford, Maine the same day.

*Id.* at 2-3.

The Government says that the 542.1 grams of fentanyl seized in Mr. Bolster's apartment is properly attributable to him. *Id.* at 4. Quoting USSG § 1B1.3(a)(1), the Government points to the guideline definition of relevant conduct. *Id.* For controlled substances offenses, the Government says, a defendant is accountable for "all quantities of contraband that were involved in transactions carried out by other participants, if those transactions were within the scope of, and in furtherance of, the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity." *Id.* (quoting USSG § 1B1.3 cmt. n.3). The Government concedes that "[a] defendant is 'not automatically saddled with the full weight' of wrongdoing for jointly undertaken criminal activity." *Id.* (quoting *United States v. Soto-Villar*, 40 F.4th 27, 31 (1st Cir. 2022)). But "if the government establishes a connection between the conduct and the offenses of conviction," *id.* at 4-5, "a defendant may be held responsible for drugs 'bound up' in others' acts that were reasonably foreseeable to him, committed within the scope of the jointly undertaken criminal activity, and in furtherance of the jointly undertaken criminal activity." *Id.* at 4 (citing *Soto-Villar*, 40 F.4th at 31).

The Government represents that its additional evidence presented at the sentencing hearing will show that Mr. Bolster's involvement was not limited to selling "tens of grams" of fentanyl, but instead that he allowed Mr. Mateo and Jason, associates of a known drug dealer, repeatedly to stay at the Bolster residence "for multiple days at a time during the three-month period." *Id.* at 5. Moreover, the Government says that Mr. Bolster "repeatedly allowed them to transport drugs to

8

and sell drugs out of his residence." *Id.* The Government makes other references to evidence to be presented at the sentencing hearing, including statements by Mr. Bolster himself. *Id.* at 6-7.

The Government also discounts Mr. Bolster's contention that the actual drug amount in the Bolster apartment was not reasonably foreseeable to him. *Id.* at 7. The Government quotes *United States v. Hernandez*, 218 F.3d 58 (1st Cir. 2000) for the proposition that "[a] defendant who conspires to transport for distribution a large quantity of drugs, but happens not to know the precise amount, pretty much takes his chances that the amount actually involved will be quite large." *Id.* (quoting *Hernandez*, 218 F.3d at 71). The Government concludes that the 542.1 grams of fentanyl found in the Bolster apartment have properly been attributed to Mr. Bolster. *Id.* at 8.

The Government also maintains that the additional 120 grams of fentanyl should be attributed to Mr. Bolster. *Id.* The Government points to the PSR's description of a statement by "Witness-3" that Mr. Bolster purchased 12 sticks (120 grams) from "Charlie" / "Jason." *Id.* at 9. Despite Mr. Bolster's objection, the Government says that Mr. Bolster himself made this statement, which it has on video. *Id.* at 9. Even if the Court were not to find the 120-gram addition to be reliable, the Government notes that his base offense level would be the same. *Id.* It urges the

9

Court to conclude that Mr. Bolster's base offense level falls between 400 grams and 1.2 kilograms for a base offense level of 30. *Id.* at 9-10.[1]

## III. DISCUSSION

The Court's discussion is necessarily limited because some evidence on drug quantity awaits the sentencing hearing. Although generally described by the Government, the Court has not reviewed the specific evidence and Mr. Bolster has not had the opportunity to object to it, so the Court is unable to make factual findings at this point. To assist the parties, the Court makes some observations to clarify its perspective on this issue in anticipation of evidence to be presented at the sentencing hearing.

United States Sentencing Commission Guideline § 1B1.3 sets forth the treatment of relevant conduct for jointly undertaken criminal activity:

> **(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
> **(i)** within the scope of the jointly undertaken criminal activity,
> **(ii)** in furtherance of that criminal activity, and
> **(iii)** reasonably foreseeable in connection with that criminal activity;
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. § 1B1.3(a)(1)(B). The guidelines define "jointly undertaken criminal activity" under § 1B1.3(a)(1)(B):

---

[1] The Government also addresses the drug premises enhancement, but as Mr. Bolster did not present any legal argument on this issue in his memorandum, the Court will address the premises enhancement at the sentencing hearing.

> **3.** Jointly Undertaken Criminal Activity (Subsection (a)(1)(B)).
> **(A)** In General. A "jointly undertaken criminal activity" is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy.
> In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was:
> **(i)** within the scope of the jointly undertaken criminal activity;
> **(ii)** in furtherance of that criminal activity; and
> **(iii)** reasonably foreseeable in connection with that criminal activity.
>
> The conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (*i.e.,* "within the scope," "in furtherance," and "reasonably foreseeable") is relevant conduct under this provision. However, when the conduct of others does not meet any one of the criteria set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision.

U.S.S.G. § 1B1.3(a)(3).

In *Soto-Villar*, the First Circuit described in detail the proper analysis for a trial court to follow when assessing drug quantity. 40 F.4th at 31. The First Circuit observed that "drug quantity plays a key role in establishing a drug-trafficking defendant's base offense level." *Id.* "Drugs are attributed to a defendant both from the count(s) of conviction and from '"relevant" uncharged conduct.'" *Id.* (quoting *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir. 1990) (quoting USSG § 1B1.3(a)(3))). "Put another way, drug quantities not included in the count(s) of conviction may still be attributed to the defendant if they were 'bound up in the acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* (cleaned up) (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1197 (1st Cir. 1993) (quoting USSG §1B1.3(a)(2))).

11

The *Soto-Villar* Court explained that in the case of "jointly undertaken criminal activity, such as a conspiracy, a defendant is 'not automatically saddled with the full weight of the conspiracy's wrongdoing.'" *Id.* (quoting *Sepulveda*, 15 F.3d at 1197). "To bring uncharged acts and drug quantities into play at sentencing, the government must establish an adequate connection between the conduct and the offense(s) of conviction." *Id.* "And it must prove all drug quantities, including those reasonably foreseeable within a conspiracy, by a preponderance of the evidence." *Id.* "The defendant's role in the conspiracy is, of course, an important datum in establishing his responsibility for the uncharged conduct." *Id.*

As in this case, the *Soto-Villar* Court addressed whether drugs discovered in an apartment could properly be attributed to the defendant. *Id.* at 33-35. The First Circuit observed that the trial judge determined who had rented the apartment containing the drugs. *Id.* at 33. The district court also analyzed the defendant's use of the apartment in relation to the charges and found the defendant had used the apartment "to store, cut, weigh, and package large quantities of drugs to sell to the conspiracy's customers." *Id.* at 34.

The *Soto-Villar* Court discussed the trial court's finding that the defendant was "deeply involved" in the conspiracy, and observed that "the drugs within the apartment were to be sold in the ordinary course of the conspiracy's operations through the defendant's network." *Id.* With this evidence, the First Circuit concluded that the record supported the trial court's finding that the defendant was a "critical cog in the machinery of the conspiracy." *Id.*

12

The First Circuit did so while acknowledging that "[a] finding of attribution requires an individualized determination of drug quantity, even when taking a conspiracy-wide perspective" and that this "determination must be based on amounts reasonably foreseeable by the defendant, contemplated within the scope and in furtherance of the conspiracy." *Id.* In making this evaluation, a sentencing court is allowed to "draw reasonable inferences from the facts before it." *Id.*

At the sentencing hearing, the Court intends to follow the guidelines as explained by the First Circuit on these issues. The Court expects counsel to address (1) the relationship between Mr. Bolster and the apartment at 84 Granite Street, Biddeford, Maine, (2) any use Mr. Bolster made of the apartment at 84 Granite Street in storing, preparing, or selling fentanyl, (3) Mr. Bolster's role in the conspiracy, (4) his role in the conspiracy in relation to his and his co-conspirators' use of the apartment at 84 Granite Street, and (5) any other evidence properly presented by the parties relevant to the determination of drug quantity.

### IV. CONCLUSION

The Court will comply with provisions of the United States Sentencing Guidelines and First Circuit caselaw in fixing the drug quantity properly attributable to Defendant Michael Bolster.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of May, 2024